# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MANUEL WINN,

        Plaintiff,

vs.

WARDEN NEVEN, *et al.*,

        Defendants.

Case No.: 2:16-cv-00273-GMN-PAL

**ORDER**

Pending before the Court is the Motion for Summary Judgment filed by Defendants Jay Barth ("Officer Barth"), Jordan Evangelista ("Officer Evangelista"), and Vangela Thompson ("Officer Thompson") (collectively "Defendants"). (ECF No. 22). Plaintiff Manuel Winn ("Plaintiff")[1] filed a Response, (ECF No. 28), and Defendants filed a Reply, (ECF No. 29).[2] For the reasons discussed herein, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.    BACKGROUND

This case arises from alleged constitutional deprivations that occurred while Plaintiff was incarcerated at High Desert State Prison. (*See* Am. Compl., ECF No. 4). On April 21, 2015, Officer Thompson claims to have smelled marijuana coming from Plaintiff's cell, which prompted her and Officer Keller to conduct a cell search. (Discipline Form I at 4, Ex. E to Defs.' MSJ, ECF No. 22-5). While conducting the search, Officer Thompson states that she discovered drug paraphernalia and an unauthorized heating device known as a "stinger." (*Id.*). On April 26, 2015, Plaintiff was issued a notice of charges based on the possession/sale of

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Plaintiff additionally filed two Motions to Extend Time to respond to Defendants' Motion for Summary Judgment. (ECF Nos. 24, 26). For good cause appearing, the Court grants Plaintiff's Motions to Extend and considers his response timely.

intoxicants. (*Id.*). Plaintiff denies receiving this notice until May 27, 2015, when he spoke with Lieutenant Potter about his disciplinary hearing. (Am. Compl. at 8–9).

On June 3, 2015, Officer Barth commenced the disciplinary hearing against Plaintiff. (Discipline Form III at 6, Ex. E to Defs.' MSJ). At the hearing, Plaintiff claims that he requested to call Officer Thompson and Officer Keller as witnesses, but Officer Barth refused. (Am. Compl. at 11). Additionally, Plaintiff claims that Officer Barth produced three photographs of the alleged contraband but only permitted Plaintiff "approximately ten seconds" to view the photos. (*Id.* at 13). Ultimately, based on the "officer report, pictures of the evidence, NIK test work sheet, and inmate statement," Officer Barth found Plaintiff guilty of the charges. (*See* Discipline Form III, Ex. E to Defs.' MSJ). As part of his punishment, Plaintiff was sent to disciplinary segregation for eighteen months. (*See* Appeal Memo at 2, Ex. E to Defs.' MSJ).

On October 21, 2015, Officer Brieger hired Plaintiff as the barber for his unit. (Am. Compl. at 22–23). The next morning, Officer Evangelista relieved Plaintiff from the position. (*Id.*). According to Plaintiff, Officer Evangelista "[took] away Plaintiff's job because Plaintiff filed a grievance against him." (*Id.*). On November 9, 2015, Plaintiff filed a new grievance against Officer Evangelista based on his removal from the barber position. (Grievance at 5–8, Ex F. to Defs.' MSJ, ECF No. 22-6). Interim Associate Warden Perry Russell denied Plaintiff's grievance, stating that Plaintiff was ineligible to work because the required Sub Classification Committee ("SCC") had not been held with the Unit caseworker. (*See* Grievance Denial at 9, Ex F. to Defs.' MSJ).

On February 10, 2016, Plaintiff initiated this action in federal court by filing an application to proceed *in forma pauperis*. (IFP, ECF No. 1). On September 27, 2016, the Court issued a Screening Order, which permitted Plaintiff's case to move forward on two claims under 42 U.S.C. § 1983: (1) Fourteenth Amendment violations of due process against Officer

Thompson and Officer Barth; and (2) First Amendment retaliation against Officer Evangelista. (Screening Order, ECF No. 5). On September 5, 2017, Defendants filed the instant Motion for Summary Judgement. (ECF No. 22).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. <u>DISCUSSION</u>

#### 1. Requests for Admission

Defendants move for summary judgment partially based on Plaintiff's failure to respond to Defendants' requests for admissions. (*See* Defs.' MSJ 15:14–25). Federal Rule of Civil

Procedure 36(a) states that a matter is deemed admitted "unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed.R.Civ.P. 36(a). Once admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Rule 36(b). Fed.R.Civ.P. 36(b). "It is undisputed that failure to answer or object to a proper request for admission is itself an admission." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). Moreover, admissions under Rule 36 are self-executing and do not require any additional court intervention to go into effect. *Am. Tech. Corp. v. Mah*, 174 F.R.D. 687, 690 (D. Nev. 1997).

Unanswered requests for admissions may be relied on as the basis for granting summary judgment. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing *O'Campo v. Hardisty,* 262 F.2d 621, 624 (9th Cir.1958)); *see also United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987) ("While the failure to respond to a request for admission may deprive a party of the opportunity to contest the merits of the case, the result is the orderly disposition of the case."). In cases involving a *pro se* party, requests for admission should generally contain adequate notice of the consequences under Rule 36. *See Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998).

Here, Defendants sent their requests for admissions to Plaintiff on June 16, 2017. (*See* Requests, Exs. A–C to Defs.' MSJ, ECF No. 22-1). Each request included specific instructions regarding the requirements under Rule 36 and explicitly noted that "[f]ailure to respond to these Requests for Admissions can cause the matters herein to be deemed admitted." (*Id.*). Plaintiff failed to respond within the time set forth in Rule 36(a)(3). (Defs.' MSJ 2:16–17). On July 27, 2017, Defendants' counsel spoke with Plaintiff via telephone in an effort to resolve the issue. (*Id.* 2:18–23); (Rowe Decl. ¶ 6, Ex. D to Defs.' MSJ, ECF No. 22-4). Defendants' counsel

states that he informed Plaintiff that the response deadline had expired but agreed to give Plaintiff a week extension. (*Id.*). Despite this extension, Plaintiff failed to respond to the requests. (*Id.* 2:24–25). Plaintiff does not contest any of these assertions in his Response. Accordingly, the Court considers the instant Motion for Summary Judgment in light of Plaintiff's admissions.

### 2. Fourteenth Amendment Due Process Claim

In order to state a claim for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). The United States Constitution does not create a liberty interest in remaining in a prison's general population. *Id.* at 483; *Anderson v. Cnty. Of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995). Nonetheless, a liberty interest may arise from restraints that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff lacked a liberty interest in avoiding disciplinary segregation: (1) the disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486-87.

In this case, Plaintiff admits that he suffered "no major disruption in [his] environment when placed in Disciplinary Segregation compared to general population." (Thompson Request 4:24–26, Ex. C to Defs.' MSJ, ECF No. 22-3). Moreover, Plaintiff admits that the length of his sentence was unaffected by Officer Barth's guilty verdict. (*Id.* 4:27–28); (*see also* Appeal Memo at 2, Ex. E to Defs.' MSJ). The uncontroverted facts therefore demonstrate that Plaintiff's disciplinary segregation did not constitute the "atypical and significant hardship" required to create a liberty interest. *See Sandin,* 515 U.S. at 484.

Even if Plaintiff had a liberty interest, however, the Court finds that no due process violations occurred during the hearing. Due process in a prison disciplinary hearing is satisfied if the prisoner receives: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974). Furthermore, findings that result in the loss of liberty will satisfy due process if there is some evidence which supports the decisions of the disciplinary board. *Cato v. Rushen,* 824 F.2d 705 (9th Cir. 1987) (citing *Superintendent v. Hill,* 472 U.S. 445, 454 (1985)).

Here, Plaintiff admits that he received the appropriate notices more than twenty-four hours before the disciplinary hearing. (Barth Request 4:8–11, Ex. A to Defs.' MSJ). Furthermore, Plaintiff admits that he was literate, did not require legal assistance, and was "able to represent [himself]." (*Id.* 4:12–18). While Plaintiff did unsuccessfully request to call Officer Thompson and Officer Keller as witnesses, inmates do not have an "unfettered right to call witnesses" under all circumstances. *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). Notably, there is no due process violation for denying witnesses who lack any new relevant information. *See Baxter v. Palmigiano,* 425 U.S. 308, 321 (1976); *Orlomoski v. Neven*, No. 2:10-CV-01250-GMN, 2011 WL 3585498, at *3 (D. Nev. Aug. 16, 2011) (finding no due process violation for denying witnesses who provide redundant testimony); *Ellis v. Benedetti*, No. 3:08-CV-0657-ECR-RAM, 2009 WL 10691065, at *3 (D. Nev. Apr. 8, 2009) ("The refusal to allow a prisoner to present redundant evidence does not constitute a violation of the right to due process.").

At the hearing, Officer Barth denied Plaintiff's request to call Officer Thompson and Officer Keller because the officers had already given their written report prior to the hearing. (*See* Discipline Form III at 6, Ex. E to Defs.' MSJ). The evidence in the record therefore included the relevant statements from the officers, and calling the officers as witnesses would have been redundant. To the extent Plaintiff sought to confront the officers regarding the content of their report, an inmates' due process rights in disciplinary hearings do not extend to cross-examination of witnesses. *Wolff*, 418 U.S. at 567–68. Accordingly, Officer Barth properly exercised his discretion in precluding the witnesses from the hearing. The Court therefore finds that Plaintiff did not suffer a due process violation and grants summary judgment for Defendants on this claim.

**3. First Amendment Retaliation Claim**

To establish a First Amendment retaliation claim in the prison context, a plaintiff must demonstrate: (1) a state actor took some adverse action against him; (2) the adverse action was because of the plaintiff's protected conduct; (3) the action chilled the plaintiff's exercise of his First Amendment rights; and (4) the action did not reasonably advance a legitimate correctional goal. *See Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2004). Furthermore, a plaintiff must show that the protected conduct was a " 'substantial' or 'motivating' factor" in a defendant's alleged retaliatory decision. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). A plaintiff must also demonstrate that the defendant's action actually had a "chilling effect" on the exercise of his First Amendment rights. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

Defendants argue that Officer Evangelista did not remove Plaintiff from his position as a barber due to retaliation, but rather because Plaintiff was ineligible for the job. (*See* Defs.' MSJ 21:18–20). This argument is supported by Interim Associate Warden Perry Russell's report,

which states that Plaintiff had not completed the required SCC with the Unit caseworker, and therefore Plaintiff did not meet the requirements for employment. (*See* Grievance Denial at 9, Ex F. to Defs.' MSJ). Plaintiff fails to address this eligibility condition in his Response.

Absent additional evidence, no reasonable juror could conclude that Officer Evangelista removed Plaintiff from the position "because of Plaintiff's protected conduct." *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."). Furthermore, Defendants have a legitimate correctional interest in enforcing their own rules and procedures for job placements. *Sullivan v. Cambra*, 45 F.3d 437 (9th Cir. 1994) (finding prison had legitimate interest in requiring completion of work forms "to ensure participant cooperation and safety in the prison environment"). Lastly, even to the extent Plaintiff could show retaliatory motive, Plaintiff admits that the action did not chill him from filing grievances and continuing to exercise his First Amendment Rights. (*See* Evangelista's Request 4:23–5:3, Ex. B to Defs.' MSJ, ECF No. 22-2). Accordingly, the Court grants summary judgment for Defendants on this claim.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement, (ECF No. 22), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Extend Time, (ECF Nos. 24, 26), are **GRANTED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __21__ day of August, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge